**IN THE COURT OF APPEALS OF IOWA**

No. 19-1840
Filed May 13, 2020

**IN THE INTEREST OF A.R. and M.R.,**
**Minor Children,**

**J.R., Mother,**
    Appellant.
_____

Appeal from the Iowa District Court for Pottawattamie County, Charles D. Fagan, District Associate Judge.

A mother appeals the termination of her parental rights to two children. **AFFIRMED.**

Sara E. Benson of Benson Law, P.C., Council Bluffs, for appellant mother.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Norm L. Springer Jr. of McGinn, Springer & Noethe, P.L.C., Council Bluffs, attorney and guardian ad litem for minor children.

Considered by Tabor, P.J., and May and Greer, JJ.

**TABOR, Presiding Judge.**

A mother, Jasmine, appeals the termination of her parental rights to two children—five-year-old M.R. and two-year-old A.R. On appeal, she argues the State did not prove by clear and convincing evidence the statutory grounds for terminating her rights. She also contends the State failed to make reasonable efforts to reunite her with her son M.R. and her daughter A.R. Finally, she questions whether it would be detrimental to M.R. and A.R. to terminate her parental rights.

After a full review of the record,[1] we affirm the juvenile court order.

## I. Facts and Prior Proceedings

This is the second child-in-need-of-assistance (CINA) case involving this family. The first involved substance abuse and domestic violence. The court closed that CINA case after Jasmine received a bridge order giving her custody.

The family next came to the attention of the Iowa Department of Human Services (DHS) in March 2018, based on the reports that the children's father, Steven, was using methamphetamine while caring for them. At the same time, Jasmine was arrested for assaulting Steven. M.R. and A.R. were placed with Jasmine's mother. They were later moved to family foster care, where they have remained.

---

[1] We review termination orders de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). We are not bound by the juvenile court's fact finding but we give them weight, particularly regarding witness credibility. *Id.* The State has the burden to show by clear and convincing evidence the grounds exist to support termination. *In re A.M.*, 843 N.W.2d 100, 110–11 (Iowa 2014). Our first priority is the best interests of the children. *See In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially) (identifying "a child's safety and his or her need for a permanent home as the defining elements in a child's best interests").

The court ordered the parents to participate in drug testing, substance-abuse treatment, domestic-violence education, and mental-health therapy. Around fall 2018, the DHS lost track of Steven's whereabouts. After that time, Steven had little involvement with the case. He did not complete the ordered services. The juvenile court also terminated his parental rights, but only Jasmine appeals.

Meanwhile, Jasmine made more progress with the case plan. She completed domestic-violence education. She also completed several substance-abuse evaluations and began attending intensive outpatient treatment. Yet, despite participating in treatment, Jasmine has consistently tested positive for illegal substances throughout the case. Between March 2018 and May 2019, she tested positive for methamphetamine ten times and marijuana twenty times. While Jasmine has admitted using marijuana, she denies methamphetamine use, even in the face of a positive test just one month before the termination hearing.

In summer 2019, Jasmine gave birth to another daughter. The baby, E.B., tested positive for marijuana. Based on that test, the State filed a now-pending CINA petition concerning her. Jasmine admitted using marijuana daily during her pregnancy.

Another continued concern for the DHS was Jasmine's pull toward unsafe companions. For instance, in July 2018, M.R. reported that Jasmine took them to Steven's house during an unsupervised visitation. She did so despite the existence of a no-contact order. That incident, coupled with a positive test for methamphetamine, resulted in visits returning to fully supervised. Even then,

Steven showed up at two supervised visits, but Jasmine called police to enforce the no-contact order.

Jasmine also associated with other known methamphetamine users. For instance, Jasmine knew her own father used the drug. Yet he lived with her for a period during the CINA case and used methamphetamine in the home. Jasmine also started seeing a new paramour, Randall, during the proceedings. Randall used methamphetamine while they lived together. Then he was incarcerated on a parole violation. Jasmine told social workers she was not dating Randall. But telephone records from the jail show she called him more than eighty times in two weeks. The recorded content of the calls reveals they had an intimate relationship that they planned to resume after his release. Jasmine also maintained a close friendship with Cassandra, a known methamphetamine user. Despite DHS warnings that Jasmine should not be around drug users, at a family team meeting in May 2019, Jasmine explained she was unwilling to end those relationships.

The juvenile court found those continued interactions show "Jasmine engages in consistent patterns of allowing unsafe people into her life and being unable to provide a safe household" for the children. The court further found the concerns leading to removal still existed after over a year of services. In short, Jasmine was "not prepared to care for" the children. The court terminated her rights, finding the State proved statutory grounds as set out in Iowa Code section 232.116(1)(e), (f) (as to M.R.), (h) (as to A.R.), and (*l*) (2019). Jasmine appeals.

## II. Analysis

### A. Statutory Grounds for Termination

To terminate parental rights, the juvenile court must first find clear and convincing evidence supporting one of the grounds listed under section 232.116(1). *See In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Even if the court rests its decision on more than one basis, we need only find sufficient proof under one paragraph to affirm. *See In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999).

We focus on paragraphs (f) and (h), which contain similar elements. Paragraph (f) applies to children four years of age or older (like M.R.) who have been removed from their parents' physical custody for twelve of the past eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days. Iowa Code § 232.116(1)(f)(1), (3). Paragraph (h) applies to children three years of age or younger (like A.R.) who have been removed from their parents' physical custody for at least six of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days. *Id.* § 232.116(1)(h)(1), (3). Otherwise, both sections require a showing the children have been adjudicated CINA and clear and convincing evidence exists that at the present time the children cannot be returned to the custody of their parents as provided in section 232.102. *See id.* § 232.116(1)(f)(2), (4), (h)(2), (4); *see A.M.*, 843 N.W.2d at 111 (describing "present time" as the time of the hearing).

Jasmine does not contest the first three elements. But she contends the court could have returned the children to her care at the time of the hearing. She

testified she has an appropriate, stable home.  A social worker agreed Jasmine's home was appropriate for the children to live in.  And she was attentive and nurturing to the children.  Jasmine also points out that she retains custody of infant E.B., so logically M.R. and A.R. would also be safe in her care.

But Jasmine does not acknowledge her ongoing substance-abuse issues. The severity of her addiction was revealed when E.B. tested positive for marijuana at birth.  The DHS filed a CINA petition for the infant.  Jasmine conceded regular marijuana use.  Even more concerning, testing showed regular methamphetamine use, though Jasmine denied that to social workers and treatment providers.  As the juvenile court determined, if Jasmine is not honest with providers about her drug use, services will have little lasting value.

Also sabotaging a safe return of the children is Jasmine's refusal to cut ties with known drug users.  She has a history of letting unstable and violent people into her life, including Steven.  We agree with the juvenile court—even if her home is "appropriate" for children, the environment is not safe and stable until Jasmine addresses the substance-abuse and relationship issues that led to M.R. and A.R.'s removal.  The State offered clear and convincing evidence supporting the grounds for termination under section 232.116(1), paragraphs (f) and (h).

**B.  Reasonable Efforts**

Jasmine next contends the State failed to prove the DHS made reasonable efforts to reunite the family.  The State argues she failed to preserve error because she did not raise reasonable efforts until the termination hearing.

The State must prove reasonable efforts as part of its termination case.  But to preserve error, the parent must "demand other, different or additional services

prior to the termination hearing." *S.R.*, 600 N.W.2d at 65. Even on appeal, Jasmine does not identify specific services she would have preferred, other than more visitation. *See* Iowa Code § 232.99(3) ("[F]ailure to identify a deficiency in services or to request additional services may preclude the party from challenging the sufficiency of the services in a termination of parent-child relationship proceeding.") Jasmine failed to preserve error by not raising this claim earlier in the CINA case.

### C. Closeness of Relationship

Jasmine's final argument is that termination of her rights would be detrimental to A.R. and M.R. "due to the closeness of the parent-child relationship." *See id.* § 232.116(3)(c). She has the burden to prove the permissive factors under section 232.116(3). *See In re A.S.*, 906 N.W.2d 467, 476–77 (Iowa 2018). The juvenile court found Jasmine and the children do not have the kind of bond "that would warrant the court allowing more time to reunify." To be clear, the record shows Jasmine did have a loving relationship with the children. The DHS case coordinator recognized that bond and admitted M.R. and A.R. would miss their mother if her rights were terminated.

Nonetheless, concerns persist about Jasmine's ability to remain sober and to protect M.R. and A.R. outside a supervised setting. And no witness testified the harm of severing parental rights would outweigh their need for safety and permanency. No doubt, M.R. and A.R. will miss their mother. But they have been out of her care continuously for more than eighteen months, and the need to establish a permanent home has taken on greater urgency. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) ("Once the limitation period lapses, termination

proceedings must be viewed with a sense of urgency.").  Jasmine did not offer clear and convincing evidence that termination of her rights would be detrimental to the children based on the closeness of their relationship.  Accordingly, we affirm the termination order.

**AFFIRMED.**